**GEIGER, Plaintiff-Appellant, v GEIGER, Defendant-Appellee.**

Ohio Appeals, Second District, Montgomery County.

No. 1922.   Decided April 17th, 1947.

Hyers, Leyland & Patterson, Dayton, for plaintiff-appellant.

Irvin C. Delscamp, Dayton, for defendant-appellee.

## OPINION

By THE COURT

This is an appeal on law from the judgment of the Common Pleas Court of Montgomery County, Ohio. This is an action for divorce, in which the plaintiff-appellant charged the defendant-appellee with gross neglect of duty. The defendant, in her cross-petition, asked for an allowance of alimony on the ground that the plaintiff had abandoned her without just cause. The trial court dismissed the plaintiff's petition and awarded custody of their two minor children to the defendant and ordered the plaintiff to pay to the defendant $15.00 per week for the care and maintenance of said children, until the further order of the court.

Plaintiff assigns as error that the judgment of the trial court is contrary to law, and is against the manifest weight of the evidence.

The petition charged the defendant with gross neglect of duty. In support of this allegation the plaintiff introduced evidence tending to prove the defendant guilty of adultery or undue intimacy with other men. Such evidence was clearly admissible under the charge of gross neglect. **Arnold**

v Arnold, 110 Oh St 416; see Vol. 14 O. Jur. Sec. 14, page 395. Other evidence introduced in support of the charge of gross neglect was found to be insufficient to justify a decree.

The plaintiff introduced evidence of admissions made by the defendant to the plaintiff, and other persons, from which an inference could reasonably be drawn that she had been guilty of adultery. Other evidence was presented which plaintiff claims corroborated such admissions.

The plaintiff raises the question of the legal effect and sufficiency of the admissions of the defendant. Sec. 11988 GC, in part, provides:

"A divorce, or a judgment for alimony shall not be granted upon the testimony or admissions of a party unsupported by other evidence. No admission shall be received which the court has reason to believe was obtained by fraud, connivance, coercion, or other improper means."

This statute is designed to prevent collusion in obtaining a decree of divorce. In the instant case the defendant vigorously resisted the action. When the party making an admission resists the action for divorce the court is justified in finding that no collusion exists. No claim is made that the admissions were made through "fraud, connivance, coercion or other improper means." Under the provisions of §11988 GC the court has no authority to grant a decree unless the admissions, if believed by the court to be true, are corroborated by other evidence. Lesh v Lesh, 138 Oh St 492; Hanover v Hanover, 34 Oh Ap 483, 488. The provisions of §11988 GC do not require corroborative testimony of each and every material fact testified to by the plaintiff. Groff v Groff, 33 Oh Ap 309; Kleinhenz v Kleinhenz, 22 Abs 658; Detrich v Detrich, 33 Abs 155; Vol. 14 O. Jur., Sec. 50, page 436.

In the instant case the trial court was required to consider all the facts and circumstances under which the admissions were made and any evidence tending to corroborate the admissions. The trial court was required to weigh such evidence against the explanation of the defendant as to her reason for such admissions, and the denial of the defendant of the truth of the charge.

The evidence shows that the plaintiff and the defendant were married at Dayton, Ohio, January 10, 1942. Two children were born as the issue of said marriage, one on April 7, 1943, and the other on September 16, 1944. On April 3, 1944, the plaintiff entered the service of the United States Navy. He

was released from service on February 15, 1946. The separation occurred on March 13, 1946, on which date the plaintiff filed his petition for divorce. The evidence shows that for a few months after their marriage the plaintiff and the defendant lived with the plaintiff's parents. A few months after the marriage the plaintiff was assigned by his employer to work in Erie, Pa., where the plaintiff and the defendant resided for a period of two months.

The defendant testified, and the plaintiff admitted, that during their entire married life he had constantly and repeatedly accused her of infidelity. The plaintiff began making these accusations immediately after their marriage. During their stay in Erie, Pa., where they had no acquaintanceship, he continued to harass the defendant with such charges. From the evidence, it may be reasonably concluded that he based these charges on the fact that she refused at times to have sex relations with him. The evidence shows that the plaintiff and the defendant had many petty differences, and quarreled constantly. The defendant left the plaintiff several times prior to the time he entered the Navy, but always returned to him after a few days' absence.

The evidence shows that on the night prior to the separation he accused her of infidelity. She testified that she had been constantly harassed by such accusations, and, in desperation and for the purpose of relieving his mind, according to her statement, she stated to him on that evening that she had been to Le Sourdesville Lake three days and three nights. She stated: "I wanted to hurt him so bad."

A police officer testified that on the day of the separation when the plaintiff, his father and mother came to take their two small children from the custody of the defendant, the defendant became hysterical and made the admission that she had done wrong, and stated that she had been to Le Sourdesville Lake with a man. That such admissions were made, although denied by the defendant, may be conceded. Whether or not such admissions were true and sufficiently corroborated by other evidence was a matter for the trial court to decide. The defendant denied any misconduct and explained her purpose in making such admissions. No evidence was introduced to prove that she had stayed at Le Sourdesville Lake, or at any other place at any time with a man other than her husband. The evidence showed that during the recent war she was employed at a war plant, which was located several miles from her home, and that she was picked up at her residence by another employee of the plant and returned to her home at

times by her foreman, in their respective automobiles. The evidence further shows that at one time she was employed at the restaurant in the Miami Hotel in Dayton. Her hours of employment were from 11:00 P. M. until 7:00 A. M. On one occasion she was invited to ride home in the morning with a young man with whom she was acquainted, and on the way home the auto in which she was riding was involved in an accident. She reported the incident to her husband. There was other evidence introduced of like probative value from which the plaintiff contends the court could have drawn an inference that the defendant had been guilty of adultery or of such misconduct as would have justified a decree. There was no direct or positive testimony of misconduct, except that of the admissions of the defendant. The trial court held that the accusations made by the plaintiff were not well founded, and that the corroborative evidence was insufficient to sustain a finding of infidelity.

The principal question for the court to determine is what weight or probative value should the court give to the admissions of the defendant in light of the corroborative evidence introduced. The court must determine whether the admissions were true and whether the admissions were sufficiently corroborated to justify granting a decree. Under the provisions of §11988 GC it was incumbent on the plaintiff to prove his case by a preponderance of the evidence. In Vol. 27 C. J. S., Sec. 139, page 737, the rule is stated:

"Proof of adultery must be clear, positive, and sufficiently definite to show the circumstances under which it was committed; but it may be sufficiently established by a preponderance of the evidence."

However, where adultery is charged, the court will carefully scrutinize such evidence, and act upon it with caution. The charge will not be sustained except upon the most satisfactory proof. 14 O. Jur., Sec. 48, page 433. If the court is not reasonably satisfied, upon the preponderance of the proof, the court must find that the charge has not been sustained by sufficient evidence. In the instant case, if the admissions were removed from the case there would be little or no evidence to support the charge. The charge cannot be sustained, neither can the admissions be sufficiently corroborated, by mere suspicion, however strong it may be, or by innuendoes. The evidence must be of a substantial character, worthy of belief.

In Vol. 40 A. L. R., in the annotation to the case of Marshall v Marshall, page 624, there appears a discussion on page 630 of the principle of law applicable to this case. Numerous cases are cited from different states, some of which have statutory provisions similar to §11988 GC. Other states, without a statutory provision on the subject, follow the rule that a divorce will not be granted on an admission or confession of a party unless it is supported by corroborative evidence. The plaintiff in this case relies on the rule which is followed in some jurisdictions, and stated on page 643 as follows:

"Many cases, however, view the rule as one subject to qualification where the circumstances attending the confession, or the circumstances of the case generally, though furnishing no corroborative evidence, do repel all suspicion of collusion or other improper motive, and **leave in the mind of the court no doubt as to the truth of the confession or admission,** and under such circumstances no corroboration is required, but **the confessions and admissions are regarded as, themselves, sufficient to authorize a decree.**" (Emphasis ours.)

In view of the provisions of §11988 GC, we are of the opinion that this principle of law has no support in Ohio. Under our Statute we are of the opinion that the true rule in Ohio is concisely stated on page 637 as follows:

"Under a mandatory statute which prohibits the granting of a divorce upon the uncorroborated 'statement, admission, or testimony of the parties,' there must be some other and different corroboration of the main fact in issue than the 'statement, admission, or testimony of the parties.' "

On page 638 a statement in support of the rule is as follows:

"It has been said to be an undoubted principle of law that a divorce will not be granted solely upon the confession of one of the parties to any act of marital disloyalty; that the frailty of human nature which prompts such a confession for the purpose of arousing the jealousy or ire of the other party to the marital state, or for the more sinister purpose of driving the other party to seek a divorce, has caused the courts to scrutinize such confessions with great caution, to ascertain whether or not they were obtained by fraud, coercion, or collusion, and to avail in a case such as presented by this record, it should be clear and free of any uncertainty as to words used by the party or the meaning intended to be given to them."

'Additional reasons for the rule are stated on page 641, as follows:

"The reason usually assigned as the basis of the rule is that it was designed to prevent collusive divorces. But there are other sinister designs, and perhaps honest mistakes, on the part of parties to divorce proceedings which the rule operates equally to prevent; for example, confessions made under coercion, as through fear or hope of forgiveness; mistakes as to marital incapacity, etc."

In view of the provisions of §11988 GC, this court holds that as a matter of law a decree of divorce cannot be granted solely on the admissions of a party, unsupported by other evidence. The corroborative evidence must be of sufficient weight and have such probative value as to convince the court of the truth of the admissions, and together with such admissions, proof of the grounds for divorce alleged in the petition, by a preponderance of the evidence.

Was the judgment of the trial court against the manifest weight of the evidence? Much of the evidence was in conflict. The trial court saw and heard the witnesses and was the judge of their credibility. Obviously the trial court believed the testimony of the defendant and evidence introduced in support of her defense and her claim to support. The trial court found, after considering the evidence relative to the admissions made by the defendant, her purpose in making said statements, all the other evidence introduced by the plaintiff for the purpose of corroborating the admissions of the defendant, and evidence introduced by the defendant in her defense, that the plaintiff had not sustained the burden of proof by a preponderance of the evidence. There is sufficient evidence in the case to support the judgment of the trial court. A reviewing court cannot reverse the judgment of the trial court on the weight of the evidence unless the judgment is manifestly against the weight of the evidence. After a review of all of the evidence in this case we cannot say that the judgment of the trial court was manifestly against the weight of the evidence.

Finding no error in the record, the judgment of the trial court will be affirmed.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.